On November 26, 2011, Flora Loomis and her husband put up a little giant ladder in front of their garage in order for Flora to hang Christmas lights. And they set it up in a step ladder configuration. The little giant ladder can be set up so that it's wide open in a straight configuration. It can be raised up very, very high because it's got telescoping legs. It can be placed in a step ladder configuration, as I say, where it does not have spreading bars that stabilize it, but instead has locks that lock it rigidly at the top. In fact, when you open it clear up, those locks are in the middle of the ladder or partway up, depending upon how far up or down you have telescoped the ladder. And when you place it in a step ladder configuration, those locks are at the top. Because of the nature of this ladder, we are here today. After Flora's husband went into the house, Flora began to work off the side of the step ladder, with the step ladder facing, of course, straight forward. And as she worked off of the ladder, she moved from her left to her right and worked higher and higher on the eaves as she hung Christmas lights on those eaves. She was what, about seven feet, seven inches above the floor? Yes, sir. Above brushed concrete. She was out in the parking lot. I'm sorry, out in the driveway. There came a point where she could not any longer do her work, because she had worked past the place that she was. So she descended the step ladder and pushed it forward several feet across the concrete, feeling it bump and skip along the way. She went back up the step ladder, began again to work on her right side, and heard a loud pop. At that point, almost instantaneously, she also felt the ladder oscillate under her. The words that she used in her deposition were shudder and shatter from left to right. Since the ladder falling over to her right side, realized that her small children, who were playing several feet up the way, might be in danger, and so she skated down the ladder, unfortunately landing on the side of her left foot. The plaintiffs, the Loomises, through me, retained Doug Smith, a professor of mechanical engineering and aeronautics engineering at the University of Missouri, to examine the ladder, to see if the ladder bore some kind of explanation for the sensations and things that had happened to Florida. Indeed, Professor Smith found that one of the locked tabs was bent, and also found, upon experiments with the ladder, that when the ladder was pushed across brushed concrete, it could be sprung or compressed inward, and could be climbed that way, and could be climbed all the way to the top that way, before it would spring out. Now, the next thing that happened, of course, was that a Doebert motion was filed. A motion for summary judgment was filed, and the district court sustained the Doebert motion, excluded Professor Smith's tests on the basis that there was not a demonstrated sufficient nexus between what he had done and what Flora had described and granted summary judgment. Of course, the standard of review, the question before this court, is whether the district court abused its discretion. That is the standard with respect to Doebert, and at least one member of this panel has concurred in Russell v. Whirlpool, which actually cited the case relied upon by the appellee in its response, Dunn v. Nexgrill, where the standard in abuse of discretion occurs when a district court, one, does not consider a relevant factor that should have been given significant weight, or two, considers and gives significant weight to an irrelevant or improper factor, or three, considers all and only proper factors, but commits a clear error in judgment in weighing those factors. Let's examine this case under that standard. One indisputable fact exists in this case at least. It's not been disputed, and it's indisputable. Indeed, Dr. Knox, Dr. Eric Knox, in his report, goes to lengths to develop this point, and that is that this ladder, by virtue of its nature, can be compressed and can be climbed, and then will jump out. It's basically like a bow that you'd shoot an arrow out of. It doesn't immediately come to mind that it's like a bow, but when you pull a bow, you're bending the limbs of the bow, and they are going to spring back at some point, because you have empowered the bow. You have energized it. When you push a stepladder forward with vinyl peat across brushed concrete, you're doing the same thing that you're doing when you're drawing the bow. You are compressing energy into that ladder. And because the ladder does not have cross pieces to resist that, spreader bars, but instead has locks at the top, which actually help innervate the ladder with that energy, at some point somehow, and Dr. Knox says this, at some point as you climb that ladder, it's going to spring out again. There's a DVD in the record that when you view it, it shows, I assume, this professor doing these experiments with the ladder in his driveway, and it's a series of clips as he repeatedly takes the ladder and gets it in the configuration and takes a few steps up. Are all of those clips, were all of those clips and those separate experiments, if you will, were they all before the district court? Yes. Or are there only a certain number of them or a clip in particular that we should be? Every clip that he made was before the district court. All right. If I might proceed with that point, the complaint, as I expect you know from reading the briefs, the complaint that was raised by Wing and was seized upon by the court was that Professor Knox had picked the rear legs up off the ground and then had climbed the ladder very carefully and very deliberately. Now, what this case is really about, of course it's about Dovert, but it's about nexus, and in this case, nexus means causation, because there's no doubt, it's indisputable that the ladder can be compressed and climbed, and then we'll jump, and we'll jump dramatically only after you reach the top. So the only question that's presented in this case is, is that what happened with Flora Loomis? Have we identified a defect which caused this problem, which caused this fall? When the district court found that there was an insufficient nexus, the district court was really finding nothing more than that the plaintiff had not adduced sufficient evidence to go to a jury on the question of causation. Now, this is a diversity case, and therefore Missouri law applies on these substantive issues. One thing that we know from Missouri law is that a case, a defective product case, can be submitted on circumstantial evidence in order to prove the issue of defect and the issue of causation. Another thing that we know, and members of this panel have written concurrent or have been involved in concurring in opinions that say this, is that in a case like this, not all possible causes have to be eliminated. What do we have here? We have someone who testified under oath that she pressed the ladder forward and felt it jumping and skipping. We know from both Dr. Knox and from Dr. Smith that the sensations that she was experiencing at that point were in fact the ladder loading and unloading its energy, repeatedly as it bumped across the concrete. We also know from her testimony that she climbed the ladder and felt nothing happening. She was cross-examined closely by defense counsel on this score in her deposition. She, after pushing the ladder forward, she climbed it all the way to the top and felt nothing. Now if you look at the videos, the video clips that Professor Knox created, he walked up the ladder and we saw the ladder, after he had compressed the ladder, we saw the ladder jumping and skipping as he went up it. What we see Dr. Smith doing is making it all the way to the top. Now folks were kind of upset because it was very, very clear that Dr. Smith was doing his very level best to make sure that the ladder didn't jump out from under him until he got to the top. And we made the remark in our brief to the court that anything that Dr. Smith could do intentionally, Flora Loomis could do unintentionally because we were demonstrating a principle about the ladder. The district court disagreed with us and said no, we had misapprehended our burden of proof at that point. It was our burden of proof to prove that the two of them did exactly the same thing with the ladder. I'd like to direct your attention in that regard. I have one quick question. What's the theory? What is the theory of liability that you're currently asserting? Is it defective design? Is it defective manufacture? No, it's defective design. There was a failure because they used lots at the top. They had to use spreader bars because by not using spreader bars, they created a ladder which could be compressed too much, could be compressed at all, and therefore put the user in the position of possibly, very possibly, climbing an energy-loaded ladder. Well, don't all stepladders of that height load up as you have termed it? I mean, is it that characteristic of stepladders? It's not a characteristic of stepladders with spreaders on them. And Dr. Smith actually demonstrated that in the videos that you're talking about. If you want me to have any time at all, I should stop probably on rebuttal. No, have I satisfactorily answered your question? So it's the lack of spreader bar. It has nothing to do with the defective lock pin. No. Well, we alleged that to begin with. During summary judgment process, we elected to- And that's why Judge Shepard referred to your current theory of recovery. Sir? That's why Judge Shepard appropriately referred to your current theory of recovery. We didn't change our theory. We didn't. Okay. Well, we won't take any more of your rebuttal time. Okay. Thank you. Mr. Ward, you may proceed. May it please the Court. Counsel, good morning. My name is Mike Ward. I'm present this morning on behalf of Wing Enterprises. The dispositive question on appeal in this case this morning is whether or not the district court abused its discretion in barring Dr. Douglas Smith's opinions concerning his compression testing. During the course of the proceedings in the district court, the plaintiff abandoned all other theories and also ultimately on appeal were limited to the compression testing. The plaintiff initially began with a sudden disengagement theory, which I think Judge Woman was alluding to. Would you raise the lectern a little bit so that you're closer to the microphone? Oh, maybe it's as high as it could go. Okay. Very well. I'm closer to the microphone, Your Honor. I'm sorry. The plaintiff's initial theory with Dr. Smith was a sudden disengagement theory that one of the tabs of the ladder disengaged when Mrs. Loomis was climbing the ladder, and that caused the accident. That was then followed by a sudden engagement theory that the tab was not all the way inserted, and then she climbed up, it didn't lock in place, causing the shutter, and then she fell. That theory was also abandoned. Ultimately, the plaintiff was left, and also the plaintiff conceded in the district court ultimately, that all tabs were in place. In fact, after the accident took place, the ladder was inspected, all the tabs were locked in place. That left solely the compression testing that Dr. Smith performed, and it really is a question of substantial similarity, which is what Judge Lowry ruled in sustaining the defendant's motion, Wing Enterprises' motion. Was the compression testing that Dr. Smith performed, was it substantially similar to the accident facts? There's no dispute in principle that an A-frame ladder, as shown in the brief, there's a picture of the A-frame on page three of our brief, there's also a number of photographs throughout the record on appeal that shows how the ladder is set up in the configuration that Mrs. Loomis had at the time of the accident. And because there's two wings or two sides of the ladder, they can be compressed together. The question is whether or not the testing that Dr. Smith performed, whether that testing replicated or created substantially similar conditions to the accident facts. Dr. Smith lifted the rear of the ladder and then pressed the legs together, and then he pushed it farther to further compress the ladders. In fact, the plaintiffs in their brief tried to describe that compression as picking the bow and making it as tight as possible, pushing it together as tight as possible. And then Dr. Smith climbed up the ladder. He was a considerable man, he was 205 pounds, Mrs. Loomis was only 140 pounds, so there's a 65-pound weight difference between the professor and Mrs. Loomis.  However, he jerked very aggressively and deliberately, trying to cause the compressed configuration for the legs to kick out. So it was an intentional act to do whatever he could in his power to deliberately create a scenario where the legs would kick out. In contrast with Mrs. Loomis, she scooted the ladder several feet across the driveway, she climbed up and then she reached and then there was an accident and she fell. There's no comparison between the testing that Dr. Smith performed and the accident facts that we have through Mrs. Loomis' undisputed testimony. There's simply no comparison. There's no substantial similarity between what Dr. Smith did and what happened with Mrs. Loomis. This was a case where there was an accident in search of a theory, and Dr. Smith could not come up with a theory that would explain with a substantial similarity or meeting the requirements of Daubert to set forth an admissible theory to explain what happened with this particular accident. The plaintiff, especially in their reply brief, the Loomis' in their reply brief, argue that Dr. Smith was attempting to demonstrate a scientific propensity, to illustrate a tendency that the ladder itself had this, when it was used, it had the capacity when used in an unstable, usable configuration, when an energy was applied, stored energy built up into the legs, the legs would kick out. They contended that was the scientific principle that his testing was sought to illustrate. But ultimately his testing was sought to illustrate a cause, an explanation for what the accident occurred. It was not limited solely to showing the existence of stored energy in the ladder leg could cause the leg to kick out if considerable enough compression force was applied to the ladder to create this stored energy. There's no indication in this case that the amount of energy that Dr. Smith created in the ladder in his testing, that that stored energy was similar in nature, scope, degree, to whatever stored energy Mrs. Loomis created. That's going to be my question, how many foot-pounds of energy would it take? Doesn't it also presuppose that the forward legs were so firmly fixed to the concrete that they would not have slipped under the, had that much pressure been applied? In other words, what am I trying to say? How much force would be required to apply to the leg to cause the ladders to compress? Your Honor, that's the problem with Dr. Smith's testing. Had the testing been similar to what Mrs. Loomis described, that she put the ladder and she scooted across a little ways and then climbed up, if Dr. Smith's testing was the same, that he picked up the ladder, scooted it the same way Mrs. Smith did and then climbed up, and then the ladder fell, or whatever the accident occurred, then we would have an explanation for the accident. Instead, Dr. Smith did the exact opposite. He compressed the ladder as hard as he could, as strongly as he could, used the plaintiff's evidence that as tight as a bowstring, draw the bowstrings as tight as possible, as they set forth in page 38 of their brief. That's not what Mrs. Smith, Mrs. Loomis did. She just scooted it across, climbed up. So regardless of what the pressure would be, we do not have a test here that duplicates, replicates the conditions of Mrs. Loomis' accident. Granted that Dr. Smith's testing shows that a ladder, the little giant ladder manufactured at Wing Enterprises, can be compressed and can incorporate stored energy and that at some point that stored energy will be released, but his testing did not do anything to demonstrate the actual accident that occurred, that there's simply no comparison, there's no nexus between Mrs. Loomis' accident and the testing performed by Dr. Smith. This court's decision in Dunn v. Nexgrill is, although it deals with a gas grill and not a ladder, is very, very illustrative of the principles here. The plaintiff, in that case, sought to make an argument very, very similar to what the Loomis' have done here. They argued that the expert's testing was to show a scientific principle, a tendency of a gas grill that the tray intersecting with the gas pipe can create a fire. But in that case, the expert rigged, in the court's opinion, I believe, Judge Woolman, you were concurring on that panel in Dunn, that the expert rigged the pipe such that, in using the court's description, unnatural position, and the court said that was not sufficient to satisfy the admissibility of that opinion, that because the testing that the expert did to demonstrate that a fire could occur in the use of this gas grill, because the expert had taken the very same type of gas grill that the plaintiff had used, that he had rigged the pipe in an unnatural way, that rendered the opinion inadmissible because it was not a substantially similar test of the accident facts. And the same is true here, as in Dunn, that we have an instance where Dr. Smith has demonstrated a scientific fact or a tendency that the ladder can be compressed, it can incorporate stored energy, and that when there's sufficient stored energy in the ladder, that energy can be released. But what he did, and it's demonstrated on the DVD and also described in great deal in Judge Lowry's opinion and also in the briefing, his testing did not duplicate the accident facts that we have with Mrs. Loomis. And because of Dr. Smith's testimony, his opinions, his testing is inadmissible, his opinions regarding the compression testing are inadmissible, and the plaintiff abandoned any other theory of liability. The district court did not err in entering summary judgment for our wing enterprises. With respect to the ruling with respect to the admissibility of Dr. Smith's testimony and opinions, that's governed by the abuse of discretion, standard of review. Under the facts before the court, the record, it cannot be said that Judge Lowry abused her discretion, that reasonable minds can differ, she did not abuse her discretion, including that because the testing performed by Dr. Smith did not duplicate, was not substantially similar to the accident facts based on the record, Judge Lowry did not abuse her discretion. And should the court have no further questions, I'll conclude. One question I have, I've heard a lot of doctor names here. Yes. That tells me that they're probably college professors. Yes, Your Honor. And probably aren't workaday ladder users. Is there any evidence here in this case that a workaday person who uses ladders like this gave testimony? Both experts had substantial ladder experience, but as far as a contractor, someone who would use a ladder on a day-to-day basis, neither expert would be of that character, but both experts have experience with ladders and giving expert opinion with respect to ladders. Dr. Knox, who testified for the defense, he has substantial ladder experience, but as far as the records showing a contractor, a painter, a carpenter who would have day-to-day ladder experience, there is no one like that, Your Honor, in the record. Thank you. Thank you. Mr. Graham. Thank you. Very quickly as to the last point that was raised when I was up here before, Professor Smith's compressed ladder theory was not a new theory. He introduced it in his very first report written in April of 2012. He tested for the compression theory on August the 25th and wrote a supplemental report under date of August the 27th, but it wasn't a new theory at any point in the proceedings. Secondly, we've begged some questions here along the way that I'd like to point out. First of all, there's nothing in the record that suggests that what Professor Smith did with the ladder was unnatural. He proved what a ladder would do without moving any tubes around, as happened in the Dunn case. In the Dunn case, the engineer rearranged the furniture, so to speak, inside of the grill and basically created a situation where the grill was going to catch fire. Professor Smith did no such thing with the ladder. He showed what a ladder will do on the basis of its ladder genes, as I said in my brief. Another question that's been begged here, and this will take me directly to the last case and probably the last few seconds that I have, but another question that has been begged here is whether, in fact, Flora Loomis climbed the ladder any differently from Professor Smith. The record doesn't show that she climbed it differently. She described how she climbed it, he showed how he climbed it, but there's nothing in the record indicating that she didn't pick up the back legs, nothing in the record that indicated that she didn't climb the ladder very carefully and slowly so as to not pitch off of it. I would direct you to Lazon, I don't know how to pronounce it, Lazon v. Senko Products, Inc. One of the members of this panel concurred on that case. It was a nail gun case, and in that particular case, the plaintiff's expert decided that the plaintiff had not described correctly what had happened to him. The plaintiff insisted that he had the nail gun several inches above the surface when it fired the second time, firing a nail into his thumb. The expert looked the situation over and decided that could not possibly have happened that way, and this court reversed a district court that excluded that testimony. Now, if Flora indeed is different from Professor Smith, I would simply say that as in Lazon, Professor Smith may have got it right. That concludes my remarks and my time. Thank you very much. Well, we thank both sides for the briefs and the arguments. The case is submitted. We will take it under consideration.